517 A.2d 71

The MAY DEPARTMENT STORES COMPANY

v.

Muriel E. HARRYMAN.

No. 13, Sept. Term, 1986.

Court of Appeals of Maryland.

Nov. 12, 1986.

Michael S. Levin (O'Malley, Miles, McCarthy & Harrell, on the brief), Upper Marlboro, for appellant.

Jeff Horowitz (Sidney Schlachman and Schlachman, Potler, Belsky & Weiner, P.A., on the brief), Baltimore, for appellee.

Argued Before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

MARVIN H. SMITH, Judge, Specially Assigned.

We shall hold in this case that injuries sustained on a shopping mall parking lot by an employee of a store in that mall are covered by the Workmen's Compensation Act. Hence, we shall affirm the decision of the Court of Special Appeals in *May Dep't Stores v. Harryman*, 65 Md.App. 534, 501 A.2d 468 (1985).

The facts are not in dispute. Appellee, Muriel E. Harryman, at the time in question, was an employee of The May Department Stores Company. May operated a store at Golden Ring Mall in Baltimore County under the name of Hecht Company. On November 28, 1983, she arrived at the mall a few minutes before her shift was to begin. She parked about two car lengths away from the entrance to the mall closest to the security entrance to the Hecht Company which employees were expected to use. At this point, she was injured when a person ran up behind her, started to grab her purse, and it hooked on the cuff of her coat so it would not come loose. As she put it, "They wanted that purse so bad, they tried to break it loose at the strap and then they threw me down on the ground."

Hecht is but one of a number of tenants in the mall, which is surrounded by a parking lot. At oral argument in this Court, it was conceded by the employer that there is a lease provision by which Hecht Company employees have the right to use the parking lot.

The Workmen's Compensation Commission made an award to Ms. Harryman. The employer appealed to the Circuit Court for Baltimore County. Summary judgment was entered in that court in favor of the employee. The employer then appealed to the Court of Special Appeals. As we have indicated, it affirmed the judgment in the circuit court. We granted a writ of certiorari in order that we might address the important public issue here presented.

Hecht claims that the Court of Special Appeals intruded into the legislative domain when it extended the employer's premises to include parking lots not owned or maintained by the employer, that the "premises" exception to the "going and coming" rule should not apply to all parking lots adjacent to commercial enterprises, and that it was entitled to a de novo trial in the circuit court.

To be compensable under Md.Code (1957, 1979 Repl.Vol., 1983 Cum.Supp.) Art. 101, §§ 15 and 67(6), the injury must arise out of and in the course of the employee's employment. Section 67(6) specifies that the terms "injury," "personal injury," "accidental injury" and "accidental personal injury" include "an injury caused by the wilful or negligent act of a third person directed against an employee in the course of his employment."

In *Giant Food, et al v. Gooch,* 245 Md. 160, 225 A.2d 431 (1967), Chief Judge Hammond said for the Court:

"[I]n the context here pertinent, we read §§ 15 and 67(6) together to mean that every employer shall pay compensation (1) for the disability or death of his employee resulting from an accidental personal injury arising out of and in the course of employment, and (2) for the disability or death of his employee caused by the wilful or negligent act of a third person directed against the employee while he is in the course of his employment.

\* \* \* \* \* \*

"It is only reasonable to infer, therefore, that the legislature when it said that accidental personal injury as defined and made compensable by § 15 of Art. 101 was also

to include 'an injury caused by the wilful or negligent act of a third person directed against an employee in the course of his employment' intended to broaden the scope of the compensation statute to include as compensable an injury not attributable to the working environment provided it was incurred in the course of employment." 245 Md. at 164–65, 225 A.2d at 433–34.

In *Gooch,* an employee who was shot on his employer's parking lot was held entitled to receive compensation.

Under our holding in *Gooch,* our inquiry is limited to whether the injury here arose in the course of the employee's employment. In *Dep't of Correction v. Harris,* 232 Md. 180, 192 A.2d 479 (1963), Judge Hammond said for the Court:

"An injury arises in the course of employment when it happens during the period of employment at a place where the employee reasonably may be in the performance of his duties 'and while he is fulfilling those duties or engaged in something incident thereto.' " 232 Md. at 184, 192 A.2d at 481.

In *Proctor-Silex v. DeBrick,* 253 Md. 477, 252 A.2d 800 (1969), an employee parked her vehicle on the parking lot provided by her employer. This lot was located across the street and down slightly from the employer's building. The employee walked diagonally across the street in question and then on the pavement provided for pedestrian traffic in front of her employer's plant to a point somewhere between the entrance to the office of the plant and the entrance provided for the employees. At this location, she slipped and fell on the ice, thus causing the injury about which complaint was made. After reviewing cases and relevant authority, we concluded that opinion by saying:

"Where, as here, the claimant had arrived on the premises of her employer and was proceeding without deviation of any kind directly to her work, it would be unreasonable to hold that injuries sustained by her on the parking lot or between the building entrance and the time

clock would be compensable, but injuries sustained between the parking lot and the building entrance would not be compensable. Therefore, we hold the injuries sustained by Mrs. DeBrick to have arisen out of and in the course of her employment." 253 Md. at 489, 252 A.2d at 807.

Although there is no Maryland case directly on point, courts in other jurisdictions have addressed the question of whether shopping mall parking lots constitute "premises," for purposes of workmen's compensation, of the various tenant stores within the malls, where the stores do not directly own or control the lots. The courts have divided on this question. 1 A. Larson, *The Law of Workmen's Compensation* § 15.42(a) (1985 ed.), states:

"As to parking lots owned by the employer, or maintained by the employer for his employees, the great majority of jurisdictions consider them part of the 'premises,' whether within the main company premises or separated from it. This rule is by no means confined to parking lots owned, controlled, or maintained by the employer. The doctrine has been applied when the lot, although not owned by the employer, was exclusively used, or used with the owner's special permission, or just used, by the employees of this employer. Thus, if the owner of the building in which the employee works provides a parking lot for the convenience of all his tenants, or if a shopping center parking lot is used by employees of businesses located in the center, the rule is applicable." *Id.* at 4–87 to 4–101 (footnotes omitted).

We quoted and relied upon similar language from an earlier edition of Larson in *Proctor-Silex.*

Cases supporting the Larson view are *Merrill v. J.C. Penney*, 256 N.W.2d 518 (Minn.1977); *Evans v. J.W. Mays, Inc.*, 25 A.D.2d 597, 267 N.Y.S.2d 233 (1966); *Berry v. B. Gertz, Inc.*, 21 A.D.2d 708, 249 N.Y.S.2d 285 (1964); *Rosenwasser v. Lanes Lake Success*, 9 A.D.2d 1001, 195 N.Y.S.2d 74 (1959); and *Frishkorn v. Adm'r.*, 26 Ohio App.2d 165, 270 N.E.2d 366 (1971). *Frishkorn* relied upon the New

York cases. It in turn was relied upon by the Minnesota court in *Merrill.* The employee in *Frishkorn* worked for a "Pick-n-Pay" store located in a shopping mall containing approximately 43 stores. The stores were all grouped in the center of the mall, which was adjacent to a large parking area estimated to accommodate several thousand cars. The employer had no ownership or control whatever over the parking area. In analyzing the case, the court first acknowledged that traditionally Ohio law required actual ownership or control by the employer "before there c[ould] be jurisdiction under the workmen's compensation law to consider the merits of [the employee's] injury sustained in the shopping center as described by the facts in th[at] case." 26 Ohio App.2d at 167, 270 N.E.2d at 368. The court then emphasized, however, that multi-tenanted shopping centers are a special type of work environment:

"It would be impractical and illogical to apply this principle to a shopping plaza consisting of multiple independent businesses, each of which would have to be an owner in common with all the other tenants in order to share a nebulous control over its geographical confines and simulate a joint zone of employment. Such concept is too narrow and restrictive and is as outmoded as holding that an accident sustained by an employee going to or leaving work by means of an elevator or stairway in a building shared in common by different tenants, did not occur in the course of or arise out of the employment because the elevator or stairway was not part of the premises over which the employee's particular employer exercised any control at the time and place of the accident." 26 Ohio App.2d at 167, 270 N.E.2d at 368.

The court pointed out:

"In the instant case, the parking area was appellant's normal and customary means to and from his employer's premises to which such passageway was an indispensable appurtenance. In reality, the employer and the other tenants of the Great Northern Shopping Center, having reciprocal rental rights and privileges, were also accorded

the common use and access of the parking area. Logically, to that extent, this was tantamount to an essential expansion of their respective premises for the purpose of adequately serving and furthering their business interests. It follows that the appellant-employee, as well as the employees of the other tenants, derived their similar rights and privileges from the shopping center by virtue of a vested privity in the objectives of their employers." 26 Ohio App.2d at 168–69, 270 N.E.2d at 369.

The court fashioned a test for control (so as to determine whether a particular area is part of the employer's premises) which takes into account peculiarities of the employment environment:

"With the advent of shopping centers and their multiple and varied retail outlets, the control of the zone of employment tests as applied in *Industrial Commission v. Barber*, [117 Ohio St. 373, 159 N.E. 363 (1927),] and *Merz v. Industrial Commission*, [134 Ohio St. 36, 15 N.E.2d 632 (1938),] calls for modifications that must keep pace with the trends of changing times which inexorably transform staid truisms into anachronisms. The relative limits or expansion of the zone of employment danger, to which an employee is subjected, must be determined from the logical and close association of the surrounding area to the premises of employment, together with the peculiar circumstances and hazards existing in relation thereto, and if an employee is injured as a result of such conditions while discharging a duty to the employer as a necessary incident to his work, he is entitled to compensation, notwithstanding the fact that the surrounding areas are neither owned nor controlled by the employer." 26 Ohio App.2d at 169, 270 N.E.2d at 369.

Courts in Illinois, Kentucky, North Carolina, and Tennessee have held that injuries received on shopping mall or department store parking lots did not occur on the employer's premises. These cases demonstrate a tendency to interpret strictly the concepts of ownership, maintenance, and control. *See Maxim's of Ill. Inc. v. Indus. Com.*, 35

Ill.2d 601, 221 N.E.2d 281 (1966); *K–Mart Discount Stores v. Schroeder,* 623 S.W.2d 900 (Ky.1981); *Barham v. Food World,* 300 N.C. 329, 266 S.E.2d 676 (1980); and *Pacific Employers Ins. Co. v. Booker,* 553 S.W.2d 586 (Tenn.1977).

In *Barham* an employee of a store in a shopping center, containing 8 or 9 stores, slipped and fell on ice. The fall occurred in a loading zone directly in front of the employer's store. Uncontroverted testimony established that the loading zone was a common area neither leased nor owned by the employer. Although the employee presented some evidence that the employer controlled activity in the loading zone, the court concluded that the loading zone did not constitute a part of the employer's premises and denied compensation:

"While the evidence here indicates that defendant Food World instructed its employees not to park in the loading zone, and that occasionally it asked customers to move their cars from the zone, we do not think such evidence rises to that level of control which is necessary to support a determination that this loading zone was a part of defendant Food World's premises. To the contrary, the uncontradicted evidence is to the effect that Food World neither owned nor leased the parking lot or the loading zone. It had no responsibility for the upkeep or maintenance of those areas and had no obligation or authority under its lease with the shopping center to instruct drivers not to park in any particular area." 300 N.C. at 333–34, 266 S.E.2d at 679.

Two judges dissented in *Barham,* criticizing the majority for (among other things) interpreting the term "control" too narrowly.

We believe the better reasoned approach here is as advocated by Larson and the court in *Frishkorn.* Accordingly, we hold that the injury here arose in the course of the employee's employment. We see no intrusion upon the legislative domain by so holding. This is but a logical extension of our own decision in *Proctor-Silex,* 253 Md. 477, 252 A.2d 800. Such a holding in no manner deprives the

employer of its right to a de novo trial upon appeal from the Workmen's Compensation Commission. The facts are undisputed and the employee was entitled to judgment as a matter of law.

JUDGMENT AFFIRMED;

APPELLANT TO PAY THE COSTS.