568 A.2d 1140

**The SPARKS STATE BANK**

v.

**Mary Jo MARTIN, Individually, etc.**

**MARYLAND NATIONAL BANK**

v.

**The SPARKS STATE BANK.**

**No. 646 Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Feb. 5, 1990.

Nell B. Strachan, Kathleen O. Gavin, on the brief, Baltimore, for appellants, Maryland Nat'l Bank and Federal Reserve Bank.

Scott B. Karp, Jerry S. Sopher and Jerry S. Sopher, P.A., on the brief, Baltimore, for appellant/appellee, The Sparks State Bank.

Donald N. Rothman and Charles S. Hirsch, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, on the brief, Baltimore, for appellee, Mary Jo Martin.

Argued before WILNER, BISHOP and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

These appeals from the Circuit Court for Baltimore County present, *inter alia*, the question of the propriety of the court's grant of summary judgment in favor of Mary Jo Martin, appellee, (Martin), against appellant, The Sparks State Bank (Sparks).[1] As interesting as some of the other issues[2] raised are, we do not reach them; instead, we believe that the court erred in entering summary judgment in favor of Martin.

As pertinent to the resolution of the case *sub judice*, the following facts, and/or inferences deducible therefrom, have been gleaned from the pleadings, depositions and affidavits in the court record. *See* Maryland Rule 2–501(e). Appellee maintained three checking accounts, one individual

---

1. The appeal by Maryland National Bank (Maryland National), against Sparks is essentially derivative. Martin sued only Sparks and Sparks, claiming entitlement to reimbursement for any judgment Martin might obtain against it, sued Maryland National and two other banks which are not parties to this appeal. Having granted Martin's motion for partial summary judgment, the court entered judgment in favor of Sparks against Maryland National and, pursuant to Maryland Rule 2–602(b), certified it as final.

2. Maryland National's appeal of the judgment in favor of Sparks raises these additional issues:
    1. As a matter of law, are endorsements proper where the checks bear the words "For Deposit Only," the name of the payee and the account number of the payee, and are deposited into accounts having the same names as the payees, but the drawer later contends that she intended other entities having the same names to receive the funds?
    A. Does the depository bank have a duty to determine whether the depositor is the entity to which the drawer wished to direct funds, where the depositor and the payee have the same name?
    B. Can the depository bank be held liable if it acted in a commercially reasonable manner with respect to the items?
    C. Where the drawor intended that another entity having the same name as the depositor actually obtain the funds, is liability on the part of the depository bank barred by § 3–405?
    Sparks, in addition to adopting Maryland National's first question, presented the additional question: "As a matter of law can Sparks, as the payor bank, be held liable for the losses between Martin and MNB, the depository bank?"

and two guardianships, with Sparks. She filed an action against Sparks to recover the amount of checks which she alleged Sparks wrongfully paid over missing or forged endorsements. At issue on this appeal are checks numbered 110, 119 and 120, which totaled $25,000.[3]

Check No. 110, in the amount of $15,000 and written on her personal account, was made payable to "Professional Community Services, Inc." That check was deposited in an account, maintained at Maryland National and titled, "Professional Community Services, Inc." It was endorsed only "For Deposit Only". Sparks debited Martin's account in the amount of the check when it was presented to it for payment.

Checks numbered 119 and 120, both in the amount of $5,000, were made payable to "C.I.S. High Yield". These checks were written on one of Martin's fiduciary accounts and both checks were deposited in an account at Maryland National titled, "C.I.S. High Yield Income/John Wesley George, Prop." Both checks were endorsed "For Deposit Only", by rubber stamp, and "C.I.S. High Yield 451–926–0". Sparks paid these checks when they were presented for payment.

Having learned, through discovery, of the existence of the Maryland National accounts and the disposition of the funds represented by the checks,[4] Sparks moved for partial summary judgment. It claimed that there was no genuine dispute as to any material fact and that it was entitled to judgment as a matter of law "[b]ecause the intended payees received, deposited and negotiated each check, [thus] plain-

---

**3.** Martin also alleged in her complaint that Sparks wrongfully paid three other checks; however, during the course of the litigation, she conceded that those checks were not wrongfully paid.

**4.** Sparks deposed representatives of Maryland National and Mercantile Safe–Deposit and Trust Company, one of the other banks Sparks sued.

tiffs suffered no harm or detriment...." [5] Martin respond-ed to the motion with her own motion for summary judg-ment, accompanied by her affidavit, which was both in opposition to Sparks' motion and in support of her own. In the affidavit, she swore that she did not intend the proceeds of the checks to go to the entities to which they went; rather, she intended that they go to North Carolina and California organizations with similar names. Affidavits of representatives from these organizations were also sub-mitted. They confirmed that the organizations Martin claimed she intended to receive the checks did not receive them.

In its response to Martin's motion for partial summary judgment, Sparks averred that it "logically assumed that the intended payees in fact received the proceeds of the checks" and that, therefore, there are numerous genuine disputes as to material facts.[6] Although it refers to the lack of an opportunity to propound its request for discovery to Martin in view of Martin's alleged late assertion of the

---

5. Sparks had previously moved to dismiss Martin's complaint on the basis that it did not state a claim upon which relief could be granted. That motion had been denied.

6. Indeed, in its response to Martin's motion, Sparks listed six ques-tions which it maintained are factual issues which must be resolved. They were:
    1. Why did the plaintiffs delay for two and one-half years before reporting this matter to the Defendant, The Sparks State Bank?
    2. Where is the documentation to substantiate the alleged private placement memorandums [sic] which the Plaintiff proffer as sup-port that the intended payees were different than the recipient?
    3. Where are the statements the Plaintiff presumably received showing the disposition of the investments purchased by the checks in question?
    4. What happened to the proceeds of the three checks totaling $25,000.00 now claimed by the Plaintiff as damages?
    5. Why were these checks not forwarded by the Plaintiff to the "intended payees" directly, rather than to an intermediary payee?
    6. And in view of the answers to the preceding questions, was the plaintiff, both in her individual and representative capacity, negli-gent?
    Viewed together, we believe they focus on the issue of whether the intended payees received the proceeds of the checks.

basis for her action,[7] Sparks at no time filed an affidavit setting forth why it could not allege facts essential to justify the denial of the motion. Nor, for that matter, did Sparks ever specifically request the court to give it an opportunity to conduct further discovery; it simply asked the court to grant its motion and deny Martin's.

Agreeing with Martin, the circuit court determined that there was no genuine dispute as to any material fact. It, therefore, denied Sparks' motion for summary judgment and granted Martin's. After denying Sparks's subsequent motion to alter or amend the judgment, but granting Sparks's motion for partial summary judgment as to Maryland National, the court entered judgments in favor of Martin against Sparks and in favor of Sparks against Maryland National. The court directed that those judgments be certified as final, pursuant to Maryland Rule 2–602(b).[8]

Maryland Rule 2–501, in pertinent part, provides:

(a) *Motion.*—Any party may file at any time a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. *The motion shall be supported by affidavit if filed before the day on which the adverse party's initial pleading or motion is filed.* (Emphasis added)

(b) *Response.*—The response to a motion for summary judgment shall identify with particularity the material facts that are disputed. When a motion for summary

---

7. The entire reference is "Because the Defendant The Sparks State Bank, logically assumed that the intended payees in fact received the proceeds of the checks, the Defendant has not yet had an opportunity to propound its discovery request to the Plaintiff."

8. Maryland Rule 2–602, in pertinent part, provides:
   (b) *When Allowed.*—If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
   (1) as to one or more but fewer than all of the claims or parties; or
   (2) pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only.

judgment is supported by an affidavit or other statement under oath, an opposing party who desires to controvert any fact contained in it may not rest solely upon allegations contained in the pleadings, but shall support the response by an affidavit or other written statement under oath.

＊　　　＊　　　＊　　　＊　　　＊　　　＊

(e) *Entry of Judgment.*—The court shall enter judgment in favor of or against the moving party if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law....

Addressing this rule, we said in *Bennett v. Baskin & Sears,* 77 Md.App. 56, 65–66, 549 A.2d 393 (1988):

Pursuant to the Rule, the hearing judge may grant summary judgment only when, after reviewing the pleadings, depositions, answers to interrogatories, admissions and affidavits submitted by the parties, he or she determines that there is no genuine issue of material fact, *i.e.,* one that somehow affects the outcome of the case, *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985), and that the party for whom judgment is entered is entitled to judgment as a matter of law. Maryland Rule 2–501(e); *Dietz v. Moore,* 277 Md. 1, 4, 351 A.2d 428 (1976); *Castiglione v. The Johns Hopkins Hospital,* 69 Md.App. 325, 332, 517 A.2d 786 (1986); *May Department Stores v. Harryman,* 65 Md.App. 534, 538, 501 A.2d 468 (1985), *aff'd,* 307 Md. 692, 517 A.2d 71 (1986). When we review a lower court's ruling on a motion for summary judgment, we too are concerned with whether there is a genuine dispute as to any material fact and whether the moving party is entitled to judgment as a matter of law. We, like the lower court, must view the facts in the light most favorable to the party against whom the motion is made and resolve all inferences against the moving party. *Austin v. Thrifty Diversified, Inc.,* 76 Md.App. 150, 152–3, 543 A.2d 889 (1988); *May Department Stores,* 65

Md.App. at 538, 501 A.2d 468 *Schlossberg v. Epstein,* 73 Md.App. 415, 423, 534 A.2d 1003 (1988). We will not disturb the lower court's ruling unless our review reveals that there is a genuine dispute as to a material fact or that more than one inference can be drawn from the facts.

With these principles in mind, we address the case *sub judice.*

Since Martin filed the action against Sparks, necessarily it follows that her initial pleading had been filed when Sparks moved for summary judgment; consequently, Spark's motion for partial summary judgment need not have been supported by an affidavit. Rule 2–501(a). Perusal of the Sparks motion and the Memorandum of Points and Authorities which accompanied it reveals its thrust—that the intended payees of the checks actually received their proceeds. That is a logical inference to be drawn from the allegations in Martin's complaint and the deposition of the bank officials.

Martin's motion for partial summary judgment was based upon the intended payees not having received the proceeds. To support that position, she supplied her own affidavit and that of representatives of the organizations, which she asserted she intended to receive the proceeds of the checks. By so doing, Martin controverted the inference, drawn by Sparks from the record as it existed when Sparks filed its summary judgment motion, that the intended payees received proceeds of the checks. Thus, insofar as Sparks's motion for summary judgment is concerned, Martin identified with particularity the material facts genuinely in dispute. Rule 2–501(b); *Bennett v. Baskin & Sears,* 77 Md. App. at 70–74, 549 A.2d 393, citing and quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Because hers was a motion for summary judgment, Martin maintains that the allegation that the intended payees did not receive the checks did more than create a disputed issue of material fact; it became an allegation of fact which

Sparks was required to controvert in Sparks's response to her motion for summary judgment. And, since it was supported by affidavit, so too must the response controverting it.[9]

Martin's argument has a certain surface appeal. When, however, it is analyzed closely, considering both motions for summary judgment together, and in context, its flaw becomes apparent. Although there are, indeed, two motions for summary judgment, they are so interrelated as to present but one factual scenario. The generation of a genuine dispute of material fact as to one of them necessarily generates the same genuine issue of material fact as to the other. In short, an allegation cannot, at one and the same time, generate a dispute of material fact and also support the proposition that there is no dispute of material fact. That is in effect what Martin would have us permit in this case.[10]

It must be conceded that, where a motion for summary judgment is supported by affidavit, Rule 2–501(b) may require that a party opposing it and wishing to controvert, through his own assertion, a fact contained in the affidavit do so by affidavit. Presumably, it is upon this portion of the rule that Martin relies. We do not agree.

---

**9.** Addressing this point, Sparks argues only that given the lateness of the Martin's assertion that the intended payees did not receive the checks, it was entitled to an opportunity to conduct discovery. Unfortunately, that argument is flawed. Maryland Rule 2–501(d) provides:

(d) *Affidavit of Defense Not Available.*—If the court is satisfied from the *affidavit* of a party opposing a motion for summary judgment that the facts essential to justify the opposition cannot be set forth for reasons stated in the affidavit, the court may deny the motion or may order a continuance to permit affidavits to be obtained or discovery to be conducted or may enter any other order that justice requires. (Emphasis added)

As previously mentioned, Sparks never filed an affidavit. Furthermore, it is not even clear that Sparks ever requested, in the court below, additional time to conduct discovery. Consequently, subsection (d) does not apply to this case.

**10.** As previously noted, Martin's affidavit was both in opposition to Sparks' motion for summary judgment and in support of her own. This makes manifest the logic of what we have just said.

The affidavits filed by Martin were a necessary response to Sparks's summary judgment motion. The allegations of the complaint and the bank officials's depositions presented the factual scenario in which the intended payees did receive the proceeds of the checks. It was necessary that that fact be controverted and, to do so, Martin filed her own affidavit and those of representatives of her alleged intended payees. That Martin filed those affidavits in support of her own motion for summary judgment did not render the issue whether the intended payees received the proceeds a fact not in dispute. Nor did it require Sparks to file an affidavit to avoid that effect. We hold that summary judgment is inappropriate where there are cross-motions for summary judgment, based on a necessarily contradictory factual predicate that is material to both motions. This is so when, as here, the initial motion for summary judgment was not required to be, and was not, supported, by affidavit and the cross motion, though supported by affidavit which the opposing party did not controvert with its own affidavit, has the effect of controverting the allegations of the first.

Since we have held that Martin's motion for summary judgment was inappropriately granted, necessitating our reversal of that judgment, so too must we reverse the judgment in favor of Sparks against Maryland National. The cases are remanded to the Circuit Court for Baltimore County for trial.

JUDGMENTS REVERSED, CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR TRIAL.

COSTS TO BE PAID ONE–HALF BY MARTIN AND ONE–HALF BY SPARKS.